IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS S. REISER, | ) |
| Plaintiff, | ) Civil Action No. 16-959 |
| v. | ) Judge Cathy Bissoon |
| CONCORDIA LUTHERAN HEALTH AND HUMAN CARE, | ) |
| Defendant. | ) |

## **MEMORANDUM ORDER**

### I. MEMORANDUM

Pending before the Court is Defendant Concordia Lutheran Health and Human Care ("Defendant" or "Concordia")'s Motion to Dismiss (**Doc. 11**), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendant's Motion to Dismiss (**Doc. 11**) will be DENIED.

### A. BACKGROUND[1]

Plaintiff Nicholas Reiser ("Plaintiff" or "Reiser") has worked for Defendant since in or about October 1999. (Amended Complaint (Doc. 9), ¶ 8). Plaintiff works currently for Defendant as its Corporate Director of Rehabilitation. (Id.).

---

[1] The following background facts are taken from Plaintiff's Amended Complaint (Doc. 9). Because the case is presently before this Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In addition, the Court views all well pled factual averments and reasonable inferences in the light most favorable to the non-moving party. Id.

In or about May 2007, Plaintiff and Kay Suder ("Suder"), another of Defendant's management level employees, divorced. (Id. at ¶ 10). Before the divorce proceedings were finalized, Suder confronted Plaintiff in his office and asked to renew their relationship. (Id. at ¶ 11). When Plaintiff refused, Suder stated that she would make Plaintiff's life "a living hell." (Id.).

In or about July 2015, Plaintiff informed Mr. Llewellyn, head of the Defendant's Human Resources Department, and Ms. McKay, Plaintiff's immediate supervisor, that Suder had obtained a Protection from Abuse Order ("PFA") prohibiting Plaintiff from entering Suder's place of work or approaching Veda Reiser, Plaintiff and Suder's daughter. (Id. at ¶ 11). According to Plaintiff, Suder obtained the PFA "based on allegations she knew were false, with the intent of causing Plaintiff difficulty at the workplace as it would be nearly impossible for him to perform his duties and comply with the PFA's restrictions." (Id. at ¶ 12).

Beginning in or around the summer of 2015, Suder began harassing Plaintiff "because of his refusal to renew their intimate relationship." (Id. at ¶ 14). Specifically, Plaintiff alleges that:

a) Prior to the summer of 2015, Suder sent text messages to Plaintiff during work which stated, in vulgar terms, that he was an inadequate lover and a poor father. She made the same assertions to numerous coworkers, who continue to discuss the assertions amongst themselves through the present. Plaintiff complained to [HR] about the statements, but HR did not take any action;

b) On or about August 26, 2015, Plaintiff was assigned to conduct an audit at the South Hills facility. A week prior to the audit, all interested parties were informed by both a meeting, which Suder attended, and an email that Plaintiff would be conducting the audit on that date. Nevertheless, shortly after his arrival at the South Hills facility, Suder called the police claiming that Plaintiff was in violation of the PFA. Although the police contacted the Defendant prior to arresting Plaintiff, the police were not told that Plaintiff was required to work at South Hills that day or that Suder had been given advance notice of at least a week that Plaintiff would be present at the facility on that day. Plaintiff was arrested and spent twenty-seven hours in prison. The arrest was subsequently expunged from Plaintiff's record, and the PFA upon which the arrest was based was dismissed;

c) Following Plaintiff's arrest on August 26, 2015, Suder went to the individual with whom Plaintiff had been conducting the audit and told her that Suder had no choice

2

but to call the police because Plaintiff had beaten Veda. This statement was completely false, but even if it had been true, Veda was not present at the workplace to be in any danger from Plaintiff's presence;

d) On February 25, 2016, during an open house at Concordia visiting nurses of the South Hills, Suder falsely told other employees that all Plaintiff did at work was stare at her. Plaintiff complained about these statements to HR, but no action was taken;

e) In or about October 2014, at Suder's suggestion, Plaintiff was directed to use Field Force Manager to track his location and the time he spent using his mobile phone. No other salaried, management level employee was required to use this humiliating program. Plaintiff was required to use the program until late 2015 or early 2016, when the Defendant stopped using the program altogether;

f) Although HR has been aware of the problems between Plaintiff and Suder since 2012, Suder, as a facility manager, continues to have input into Plaintiff's performance evaluation. HR has not taken any steps to filter or mitigate the accusations of Plaintiff's poor performance made by Suder even though those accusations conflict with the performance data on Plaintiff provided by the other facility managers

(Id.).

Plaintiff alleges that the above acts were "sufficiently severe to alter the terms and conditions of [his] employment and interfere with [his] ability to perform his duties." (Id. at ¶ 15). Plaintiff further alleges that he has "suffered from anxiety and depression as a result of the foregoing actions." (Id. at ¶ 16). Finally, Plaintiff alleges that he reported some of these actions to the Human Resources Department but that no remedial action was taken. (Id. at ¶ 18).

Based on the foregoing allegations, Plaintiff claims that Defendant subjected him to a hostile work environment because of his sex, in violation of Title VII, 42 U.S.C. § 2000e *et seq*. (Id. at ¶¶ 6-22).

**B. ANALYSIS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d

3

203, 210-11 (3d Cir. 2009).

In his Amended Complaint, Plaintiff claims that he was subjected to a "hostile work environment" because of his sex. To state a *prima facie* claim of hostile work environment under Title VII, Plaintiff must plead that: (i) he suffered intentional discrimination because of his sex; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected him; and (iv) the discrimination would negatively affect a reasonable person in Plaintiff's position. Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990). To rise to the level of actionable harassment, "the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted); see also Hodson v. Alpine Manor, 512 F. Supp. 2d 373, 387 (W.D. Pa. 2007) (holding that a plaintiff must show that she was subjected to "repeated, if not persistent acts of harassment").

Here, Plaintiff has alleged sufficient facts to support a hostile work environment claim. In his Amended Complaint, Plaintiff alleges that his ex-wife, Suder, "used her position as a management level employee of the Defendant and as daughter of the Defendant's CEO to harass Plaintiff because of his refusal to renew their intimate relationship." (Doc. 9 at ¶ 14). Specifically, Plaintiff alleges, among other things, that Suder: (1) sent Plaintiff inappropriate text messages and told co-workers that he was an "inadequate lover," (2) called the police to have Plaintiff arrested for violating the PFA after he attended a mandatory work event; (3) spread a false rumor that Plaintiff beat their daughter; (4) falsely told other employees that all Plaintiff did at work was stare at her; (5) suggested that Plaintiff be required to use Field Force Manager to track his location and the time he spent using his mobile phone, though no other salaried,

4

management level employees were required to use the program; and (6) gave Plaintiff several poor performance reviews. (Id.). The Court finds that these actions, taken together and taken by the CEO's management-level daughter, may be sufficiently severe and pervasive to have altered the terms and conditions of Plaintiff's employment. See, e.g., Gupta v. Sears, Roebuck & Co., 2007 WL 2253609, * 6 (W.D. Pa. Aug. 3, 2007) ("the issue of whether discrimination was severe or pervasive is fact specific and more appropriately addressed at the summary judgment stage"; under Rule 12(b)(6), plaintiff need only "[place d]efendant on notice of her claim for relief")(citations omitted). Furthermore, Plaintiff has alleged sufficient facts to show that he was negatively impacted by the alleged harassment, as he claims that he has suffered from anxiety and depression. (Doc. 9 at ¶ 16). Finally, the Court finds that the above acts would negatively affect a reasonable person in Plaintiff's position.

Notably, in its briefing, Defendant does not dispute that the above-described acts could have created a hostile work environment for Plaintiff. Rather, Defendant argues that Plaintiff's hostile work environment claim fails because these acts were not motivated by sex but rather were the result of a family law dispute. Contrary to Defendant's arguments, however, Plaintiff specifically (and significantly) alleges that Suder's acts were taken "*because of [Plaintiff's] refusal to renew their intimate relationship*." (Doc. 9 at ¶ 14). Thus, taking as true the allegations in the Amended Complaint, the Court finds that Plaintiff has presented a plausible claim he was discriminated against on the basis of sex. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (in deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must construe complaints in the light most favorable to the plaintiff). Defendant's argument that Plaintiff has failed "to establish a causal connection between his alleged refusal to submit to Suder's purported sexual advances and the alleged harassing conduct" goes not to the sufficiency

5

of the pleadings but rather to the factual basis of the allegations. Such an argument is better suited for adjudication at summary judgment rather than through a motion to dismiss.

In short, though the trier of fact ultimately may be convinced that the alleged harassment was neither on account of Plaintiff's sex, nor was severe and pervasive such that it altered the terms and conditions of his employment, those questions are more appropriately resolved upon consideration of a complete record. Because this dispute is at the pre-discovery motion to dismiss stage, when the allegations in the Amended Complaint are taken as true, with all reasonable inferences in favor of Plaintiff, the Court concludes that it cannot dismiss Plaintiff's claim for hostile work environment harassment under Title VII.[2]

## II. ORDER

For the reasons stated above, Defendant's Motion to Dismiss the Amended Complaint (**Doc. 11**) is DENIED.

IT IS SO ORDERED.

December 8, 2016
                                                          s/Cathy Bissoon
Cathy Bissoon
United States District Judge

---

[2] Because the Court finds that Plaintiff has alleged sufficient facts to support his hostile work environment claim, it need not reach Defendant's alternative argument that Plaintiff cannot sustain a claim for *quid pro quo* harassment because he has not alleged that he suffered a tangible employment action and because he failed to exhaust such a claim before the EEOC. See King v. City of New Kensington, 2008 WL 4492503, at *18 (W.D. Pa. Sept. 30, 2008) (distinguishing between a *quid pro quo* claim and a hostile work environment claim, "which requires the plaintiff to demonstrate 'by the totality of the circumstances, the existence of a hostile or abusive working environment which is severe enough to affect the psychological stability of [an] . . . employee.'").

CC (via ECF email notification):

All Counsel of Record